## Case No. 14,761.

### UNITED STATES v. CAZARES.

[Hoff. Land. Cas. 90.] [1]

District Court, N. D. California. Dec. Term, 1855.

MEXICAN LAND GRANT—VALIDITY—NATURALIZATION.

The validity of this claim not doubted.

Claim [by Antonio Cazares] for two leagues of land in Marin county [the Rancho Cañada de Pogolome], confirmed by the board, and appealed by the United States.

S. W. Inge, U. S. Atty.
Halleck, Peachy & Billings, for appellee.

HOFFMAN, District Judge. It appears from the documentary evidence in this case that James Dawson, the deceased husband of the present claimant, on the twenty-seventh of December, 1837, presented a petition to the commanding general, setting forth that he, together with McIntosh and one James Black, had obtained a grant for the place called "La Punta del Estero del Americano;" that he had built a house upon it, and planted a large vineyard and an orchard with more than two hundred fruit trees, and had placed

1 [Reported by Numa Hubert, Esq., and here reprinted by permission.]

upon it cattle, horses, &c. He further represented that the grant had been obtained in partnership with the two persons mentioned, but that McIntosh was attempting to eject him. He therefore prayed that he might be protected in his rights. The petitioner, though he had long resided in the country, does not appear to have been naturalized at the time of making this petition, but the documents show that letters of naturalization were obtained by him on the twenty-ninth of December, 1841. On the eighteenth of September, 1843, he renewed his application to be put in possession of the land, and the governor to whom this second petition was addressed referred it to the secretary for information. By the report of that officer it appears, that although the petition for the land had been in the name of the three applicants, yet the grant had been made to McIntosh solely, as he alone possessed the essential requisite of being a naturalized Mexican citizen. The secretary therefore suggests that although the request of Dawson cannot be granted, yet inasmuch as he had since been naturalized, and had married a Mexican woman, his application for another piece of land should be favorably considered. The governor, in accordance with this suggestion, on the twenty-first of October, 1843, ordered the proceedings to be returned to the party interested for his information. It is presumed that it was in this way that these documents came into the parties' possession, and are not now found among the archives. It does not appear that Dawson petitioned for a grant before his death, which occurred very soon after; but a grant is produced in which it is recited that his widow, the present claimant, having sufficiently proved the right of her deceased husband to petition for the land which she then occupied, and in consideration of the great losses sustained by her husband on separating himself from McIntosh, and the favorable reports, &c., the governor grants to her the land solicited, known by the name of the "Cañada de Pogolome," to the extent of two square leagues, a little more or less. It is this land which is now claimed by the appellee. This grant was issued on the twelfth of February, 1844, and it appears to have been approved by the departmental assembly on the twenty-sixth of September, 1845. The genuineness of the above documents is fully proved; and it is also shown that the land was long occupied by Dawson before his decease, and since then by the present claimant. Although the expediente for this grant is not among the archives, yet, as observed by the commissioners, "its notoriety, the long possession, and the circumstances surrounding it, relieve it from any suspicion of fraud or forgery." The boundaries, as well as the extent of the land, are specified in the grant, and indicated with evident precision on the map to which it refers. We think, therefore, that the claim is valid and ought to be confirmed.